For anyone to whom it matters, we will take a short recess after the argument in this case. May it please the Court, my name is Joan Killeen, appearing for appellant. And I would like to reserve approximately three or four minutes for rebuttal. This case presents an issue of first impression in this Court. It involves the extent to which a district court can enter a protective order in a habeas corpus case. This issue has not been covered by the Court's prior cases involving protective orders. We recognize that this panel is bound by the en banc decision of the Court in Bideker v. Woodford. However, Bideker involved the protection of trial counsel's files in a habeas corpus proceeding. In that particular case, the district court had granted discovery of trial counsel's files and entered a protective order saying that they could not be disclosed to any parties outside of the habeas corpus proceeding. The State immediately took an appeal of that order. It was in an entirely different posture from this case, and it also involved an entirely different set of information. Do you agree that we review this decision by the district court for abuse of discretion? Yes, Your Honor. Where do you see the abuse of discretion here? There are a couple of ways that a district court can abuse its discretion, and which one did the district court use here? Well, the district court, this case is similar in some respects to the case of Wharton in which the Court, this Court found that the district court had abused its discretion in entering an overly broad protective order. In this case, the district court protected trial counsel's files, and I want to reiterate, and we've said it several times in our briefs, that we have not sought, through informal discussions with counsel before we filed the motion to modify it, and in the district court and in this court, we have maintained consistently that we are not seeking disclosure of trial counsel's files or the information contained within those files. We also are not seeking disclosure of trial counsel's testimony. But in this case, the district court abused its discretion by seeking to protect information that is a matter of public record that was disclosed in an open evidentiary hearing, which was essentially the equivalent of a trial, and it protected information that did not fall within the attorney-client privilege and that is in no way confidential or protected information. It does not involve trade secrets or the like. Furthermore, as we have explained, a protective order can protect information in pretrial proceedings, but once you have a trial, as in this case, and the information is disclosed and on the public record, a court can't then say that the public or, in this case, the prosecutor has no right of access to that public information. That can't be right as broadly as you stated it. That is to say, your argument, at least so far, appears to be that if something is stated in open court, the court cannot thereafter seal the record? I'm not saying that the court can never seal the record, but in this case, there was, to begin with, there was never any effort to keep confidential the information when it was initially disclosed. The information that we're talking about is not, I agree that there are some situations where overriding interest might require that information be kept confidential or that records be sealed, but there are no such interests here. In this case, we had an evidentiary hearing in which numerous witnesses testified, including family members of Ghent, who had also testified at the original trial, experts who testified and who provided information pursuant to the federal rules. This was all information that was not within the attorney-client privilege and was not known to trial counsel, and it's effectively the same as a trial. The conceptual difficulty I have with your argument, and maybe you can help me out here, the purpose of the hearing so far has been to determine whether he received ineffective assistance of counsel, and if he did and he gets a new trial, should he be put back in the position he would have occupied had he had effective counsel in the first place? And if he had had effective counsel in the first place, none of this material would have been disclosed, or at least a trial court could find that some of this material, even though it wasn't itself covered by the privilege, would not have been disclosed if he'd had effective counsel. So why wouldn't the district court have at least the discretion to try to put back the status quo ante? Your Honor, first of all, well, the hearing was on several issues including ineffective assistance of counsel. The case was reversed on a separate issue, so there was no finding of ineffective assistance, but that's really not the relevant point. But that's what the trial was about in part. The hearing was in part about that. It was on a number of issues, including his competency and some other issues. But essentially, if you look at this in the sense of a trial, supposing he was in state court and he had a trial, and the state court reversed for some reason, for the erroneous admission of evidence, for example, as occurred in this case. And he went back and had another trial, and then more evidence was produced. And then supposing that case was reversed again, and he went back and had a third trial. Now, obviously, in each of those trials, that testimony that was produced would be available for impeachment, should the witnesses that testified in those different trials testify differently. And that's what we're addressing here. In other words, we had people who testified in the first trial and who testified in the hearing and who may well testify in the third trial. Now, they've already testified differently from the first trial to the hearing. They may testify differently yet again at the second, you know, at the retrial. And we have experts. You could have, for example, in Gantt, we actually had two trials, where there was a defense put on, he was found guilty, and then they had to do a retrial in a special circumstance. Obviously, by the time of the retrial, the prosecutor already had all of the information that, you know, in terms of the defense case, it already had all of that information. So it wasn't, it was in a position to have information with respect to Gantt's case. He presented mental state experts, et cetera, so that on retrial he was in possession of that information. It's effectively the same thing. But I don't understand the protective order to cover what you've just described, that is the information that came out in the trial itself, because that would be an independent source of the information. Does the protective order cover that or not? You're asking if the protective order covers the hearing itself? No, it covers the previous trial. It wouldn't cover the information from the previous trial. Well, what I'm trying to explain is that if you look at an evidentiary hearing in Federal court, an open public hearing in which witnesses voluntarily come in and testify and reveal information, how is that any different from another trial? In other words, if Gantt was a Federal defendant and had another trial, this would all be revealed. And what we're arguing is that the information, the testimony in open court should be available for impeachment of these witnesses if they're to testify in the second trial and if they're to testify inconsistently. In addition to the impeachment issue, there's also the issue of closing public proceedings. Now, this Court and the United States Supreme Court and many other courts have consistently stated that you cannot close public proceedings, that the public has a right to access these kinds of proceedings. Our evidentiary hearing was open to the public. And as far as I know, the records are still in the district court's files. But this is not a question of making it open to the public. This is a question as to whether or not this information can be used in a subsequent state court trial. But what we're – but we're not – we're not trying to seek an unfair advantage here. We're not asking for trial counsel's files. We're not asking for any confidential communications. Let me come back to this question, and I'm not sure this is the legal standard, but you said you're not trying to seek an unfair advantage. Well, obviously, if there was ineffective assistance of counsel earlier, that was not your fault. I mean, you're counsel for the other side. Right. But it may be thought unfair if there has been ineffective assistance of counsel. We are now in a proceeding designed to test whether or not the defendant's constitutional right was violated by ineffective assistance of counsel. And the price, you're arguing, for the exercise of that right is the testimony that otherwise wouldn't be there, because otherwise you wouldn't be trying ineffective assistance of counsel, that necessary testimony to test whether or not there was ineffective assistance of counsel you get to take advantage of. And the triggering for that is the asserted violation of his constitutional right by his earlier counsel. Now, I understand, again, you were not his earlier counsel. Any ineffectiveness of his earlier counsel is not your fault. But nonetheless, it strikes me as unfair, and I think unfair even within the meaning of Biddeker, to make that be the price for exercising your right to challenge ineffective assistance of counsel. Your Honor, if we were seeking to use the information in the case in chief, I think that you would have a very valid argument. I think that if the State sought to use this information, in other words, to take information obtained in the habeas proceedings and use it as substantive evidence of guilt, then I agree that would be taking unfair advantage. But we're not seeking to do that. In fact, if none of these witnesses testify, there wouldn't be any need for impeachment. But the Supreme Court has said repeatedly, and this Court has agreed, that just because something is protected in one context, for example, in the Simmons rationale and the line of cases following, just because something is protected in one context doesn't immunize witnesses from being impeached if they should testify inconsistently. So we all know how it works in terms of earlier testimony, that you want to get somebody on the record in a deposition, you want to get somebody on the record in an earlier trial, not necessarily because or not merely because you want to prevent them from saying one thing and saying the opposite the next time around, saying the truth one time and lying the next or lying the first time, telling the truth the second time or lying in two different ways, any competent counsel will seize upon fairly minor inconsistencies that may or may not be lies, and those then can be used to discredit the testifying witness. And I think if you have access to the hearing on ineffective assistance of counsel and all of that testimony, and you can sort of pick at and cross-examination saying, didn't you say this, didn't you say that, you're not going to be confined to statements of absolute lying. You're going to be able to use, as any competent counsel would use, inconsistencies. Isn't that right? Yes. I understand what you're saying. But on the other hand, isn't that what the role of a trial judge is for, is to determine that any kinds of abuse doesn't occur? And essentially what we're trying to avoid is the immunization of these witnesses from any, you know, downside from committing perjury in a subsequent trial. And in addition, I think there is a significant interest in not sealing public confidentiality. Let me back up on the question of perjury. These are witnesses, at least as I understand in the context of this case, who have already testified in the State trial, maybe twice. And they're now testifying in the Federal hearing. And to the extent that they're telling stories that are inconsistent in the Federal hearing, inconsistent with what they said in the earlier State trial, you can go out and impeach them then. You can impeach them then. And you can go after them for perjury in the Federal trial, in the Federal hearing. Can't you? You're saying in the – well, we did impeach them in the Federal hearing. But what I'm saying – And if it's a lie and you want to go after them for perjury, and there really is perjury, you can go after them for that. Can't you? You could. But I think, you know, if you look at the trial in the sense of trying to have a fair trial all around, you don't allow witnesses to give testimony in an open public forum in a Federal court and then say that nobody can know about it or, you know, that they're absolutely immunized from being impeached. Is that kind of a waiver argument? In other words, that Gant didn't speak up at that time, and therefore he can't claim now that the record should be sealed? Well, he's never – he didn't even seek any kind of protective order until the first day of the hearing, and that was specifically with respect to trial counsel. And then the order that was entered in this case wasn't entered until after the hearing was over. But all of this information was disclosed. All of the depositions were taken without a protective order. There was no protective order entered when the trial counsel – well, trial counsel's files are relevant because we're not seeking that. But there was never any protective order with respect to the Rule 26 materials handed over or any of that. And the other point is that – The testimony of these experts went to the issue of ineffective assistance of counsel at the first, second or third trial, whichever the relevant one was. The experts at the hearing? Yes. The experts at the Federal court hearing went to ineffective assistance of counsel at the State trial. They were actually arguing ineffective assistance as to both trials. There was a guilt-faced trial, and then there was a second special circumstances and penalty trial. So the idea was that the trial counsel was ineffective for not pursuing a mental health approach. A particular – yes. Right. And that these – this kind of testimony was available at that time. Is that where you got into these experts? Well, the – well, just very briefly, there was a mental state defense presented at trial of diminished capacity, and then in the habeas corpus proceedings, Gant argued that his defense should have – instead have been that he suffered from PTSD, which is a different type of mental defense. So the experts at the hearing were presented to say this is the defense trial counsel should have presented. So, I mean, that's another point we've made all along, is this was never any information that Gant has suggested should have been secret, which I think goes to why he never sought to have it protected, because he's saying any competent counsel would have put on this defense, not the defense that I actually got. So you're – as I gathered your argument, and I'll put words in your mouth so you can tell me where I'm wrong, that this case is different than Bideker because this information was never in trial counsel's files. Exactly. Because he hadn't developed it. And that was the whole thrust of the case. It should have been developed. It wasn't. And therefore, the attorney-client privilege in the Bideker sense doesn't come into play. Exactly. That's exactly our case. Counsel, you've exceeded your time, but we've taken up a lot of it, so you'll have two minutes still for rebuttal. All right. Thank you very much, Your Honor. Good morning. May it please the Court, Justice Young and Grace K. Wong, a by-court appointment for the Respondent. And, David, if we could get Ms. Wong to our desk. Thank you. Good morning. This case does not raise an issue of first impression. This case asks a very narrow question, which is whether Judge White abused his discretion in issuing a modified protective order. And the answer to that question is no, he did not. The protective order here states that protective information includes attorney-client privilege material and attorney work product. That information cannot be used at any subsequent hearing, retrial, whether criminal or likewise in this case. How are the files of the experts in either category? They clearly are not the attorney's file. And the experts' own files, for example, why would that be the attorney's work product? I believe that some of the information on which the experts relied on came from the trial counsel's files. So to the extent that it falls under the rubric of attorney-client privilege or attorney work product, it would be affected. Let me follow up on this, if I may. Is it your position that what is appropriately protected falls exclusively within those two categories, that is, things that are covered by the attorney-client privilege and things that are covered by the work product privilege? And is that your interpretation of what Judge White has done? Or instead, has he protected those two categories plus something else? I think if you look at the history of the protective order here, it's actually the former. The initial protective order that Judge Ingram issued explicitly stated that expert witness files would be covered by the protective order. Then Judge White modified it to say attorney-client privilege material and attorney work product doctrine. So would you be satisfied with something from this court that said it's not an abuse of discretion insofar as it covers only these two categories of items and anything that inadvertently was included that was other than work product or other than attorney-client privilege, that's fair game for the prosecution? I don't think the court needs to even reach that issue. We may or may not, but I'd still like an answer to my question. Would that be satisfactory to you and your client if that's all that the protective order covered? I think actually if you read the protective order, it's a little bit more detailed than that in that it says Also, that's still not an answer. I want to know if that's sufficient for you or if you're asking for something more. If the information comes from the trial counsel's files and could not have been found in any other mean or fashion besides being found in the trial counsel's files, it's covered by the protective order. And I think Judge White specifically states as much in his order when he says Counsel, is that a yes? That was a yes. Okay. So as I understand it, you're asking Bideker to cover only things that are covered by the privilege, directly by the attorney-client privilege, and things that are covered by the work product privilege. And anything that either is originally outside of those two categories or has been independently developed, even though it might also happen to be in those categories, would be fair game for the prosecution on retrial. If it could have been independently developed. If it comes uniquely from the attorney-client privilege or the attorney-work product doctrine, then it would be protected information and would be covered by the protective order. Now, how much do we know at this point as to how Judge White would – and we have the order in front of us, of course. How much do we know about how Judge White will interpret and apply this order? That is to say, have there been specific motions by the State to say, I want to use this testimony, I want to use this file? There have not been such motions. And that brings us to the second issue of whether or not part of this order is right for review. As we noted in our briefs, Judge White invited Gent to file an order stating which parts of the record he believed should be sealed in light of the protective order. Before Mr. Gent could actually submit such an order, the State filed this appeal. And prematurely, we would add – Well, let's assume it's not premature. Okay. You said, I thought I detected in one of your earlier answers that some of the expert files or opinions may have been based on information in defense counsel's files. That is correct. May have been or was. I believe that there are military records in the trial counsel's files which form the basis of the expert's opinion. Couldn't those – aren't those classically things that can be developed independently by the prosecution? His military records are not uniquely available to attorneys for him, are they? Yes. Those military records could be developed independently. What do we do with the problem that is very common in various forms of litigation? I find something through my own efforts on behalf of my client. It's very valuable to me or maybe valuable to me only in the sense that if it comes out, it's very damaging to my client. It's out there and available to be discovered by the other side, but they haven't discovered it. It could be discovered, but they haven't. Now, for example, in this case, let's say we have something that's in the file that could be discovered, but the only way they do discover it is they find it in the file. Now, is that covered by the injunction, the protective order, as you read it? I think what you're – the scenario that you're describing is exactly what Bitteker tries to prevent. And in Bitteker, the panel, which Judge Nelson sat on, specifically stated that the whole point of this protective order is to put the petitioner back into the place he would have been in had no constitutional violation occurred. What you've described, Judge Fletcher, is exactly the problem that we're concerned with. Even though the information, if it had been discovered independently, is not protected. Exactly. But by having access to trial counsel's files, the state has a leg up. And what they're asking for, basically, is to have a free pass at discovery and use that in developing their case below, which is – Actually, they have very expressly not asked for counsel's files. Well – They're not asking for counsel's files. But the information that is in the files that otherwise would not have been there, they would not have had access to, it's that type of information that we're concerned about. But isn't the free ride given to the expert? In other words, the expert does whatever the expert is going to do. Goes out and plows the furrow, comes up with an opinion, testifies at the Federal Court hearing, and then gets a free pass at the retrial. In other words, that prior opinion, that it's A, has now become B. And yet that expert is never going to have to answer to how did it get from A to B. I think that the two issues are being conflated. One is what does the protective order cover, and one is what is being sealed and what is the State not going to be able to look at because of a sealing order. And the issue of sealing has not been addressed by the Court because we were unable to file an order requesting or delineating which information should be sealed and which information should not be sealed. So for purposes of this litigation at this time, all we have is the order. And all we have is, and it is, again, the narrow issue of when you read this protective order, was it an abuse of discretion to protect the information as described by Judge White? Isn't it abuse to protect attorney work product information or attorney client privilege information? We do not believe that this panel needs to define what is covered by that particular order. Merely it needs to ask the very, very narrow question under Rule 26. Can we decide if it's an abuse of discretion if we don't know what it covers? Don't we have to figure out, isn't that sort of opposite, first figure out what it covers and what it means and then decide if that is an abuse of discretion? I think the case law on these particular issues is actually quite instructive. Both Biddeker, Osbond, and McDowell, all cases on which this panel has either sat on or authored opinions have protective orders which are nearly identical in scope and coverage as to the one here. In Biddeker, the protective order specifically stated that attorney client privileged information would be covered and could not be used in subsequent retrial. In McDowell, it was the same, and in Osbond, it was the same. And as the court in Biddeker noted, we're talking here about an individual who is facing the death penalty, has to bring a habeas proceeding in which he's faced with a Hobson's choice. He wants to raise an ineffective assistance of counsel claim, but he needs to reveal what's in his trial counsel's files or the thoughts and proceedings of his trial counsel, and he runs the risk of having that information used against him later. Biddeker specifically says it would have been an abuse of discretion had the judge not issued a protective order to keep this information from being reused. And that's it. I understand where you are now, that when you get back to district court, it will be your position that the protective order as it now stands would not prohibit the State from cross-examining the expert witnesses based on their testimony in district court. Yes, that is correct. All right. Now, I mean, I don't want to be – I'm not sure I want to intervene too much to contradict your answer, but it seems to me that there are going to be certain circumstances in which that testimony is sufficiently related to attorney-client privilege or work product that you need to conduct a specific inquiry as to, okay, where did that testimony come from, and you can't just say, well, the testimony is available. And we don't have any testing of that. We don't have the actual testimony. We don't have the district judge application of that and the district judge tracing that through, because all we have is the order. Again, right now, we have the protective order. The second issue is the sealing order. At this point, what Mr. Gant and counsel need to do is to sit down and determine what parts of the evidentiary record should be sealed in light of the protective order. One of the issues is whether the expert testimony should be sealed. And if it falls within the rubric of attorney-work product or attorney-client privilege, obviously, we would make sure that that information remains protected. But – And what do you mean by falls within? Is it somehow traceable to or related to or discovering information that was in the file that was otherwise discoverable, but now they know it? They can go out and – now – let's take the example of military record. Correct. Now that they see the military record that they never previously saw, never made the effort to find, now that they've found it and they say, oh, you know, there's some really good information in there, now I want to go get that. The State. The State says that. What are the – we don't have any application of the order by the district judge on that question. We don't. That's correct. I mean, we don't have anything for this panel. And does that come within work product, within – in this context? Of course, it is work product. Is it protected work product? Is – I mean, if they'd gone out and found it independently, it's clearly not protected work product because they found it independently. But now we know that they've got to – I mean, I guess they could go out and find it now, but it's not independent. I'm not sure whether that comes within work product or not. And I guess the district judge hasn't told us yet. He hasn't told us what he thinks his order means on that point. That's correct. And I think that any – I think we're having a hypothetical discussion of what may or may not happen below. And what may or may not come within work product and attorney-client as the judge interprets the order. And the discussion is hypothetical because the appeal on this point is premature. There's no order before the judge – before this panel. And it raises the very issue that, in terms of ripeness, this Court has identified in the past, which is where you're discussing a contingent future event that may not occur as anticipated or, indeed, may not occur at all, this Court is not deemed to have a ripe issue before it. And that would be in the John Smith case, 871F2nd at 883. Again, we'd like to focus the panel on the protective order as it exists and note that this protective order falls well within the rubric of the cases before it. And it is not an abuse of discretion to issue it as is. The questions that you're posing today are hypothetical questions of how will it be applied? If the judge does X, would that be a violation of the order or a violation of Rule 26 or not? How would those issues come up when they are ripe procedurally? How would you see that playing out? It sounds as if, in some respects, the counsel for both sides have some areas of common understanding. There may only be half a dozen areas where there's a difference of view. In those areas where there may be a difference of view, how would that play out? I believe that if the one we have the issue of the court allowing us or inviting Ghent to submit an order to seal the evidentiary record, that will inevitably raise some of the issues that Ms. Colleen has discussed before the court today. If the at the state trial, if the prosecutor chooses to use information, that would also raise the issues and make them ripe for review. By whom? If they're raised in the state proceedings? In the state proceedings, if they attempt to use information that is deemed protected by the protective order, I think that at that level, at the trial level, that would need to be decided by the court and interpreted. By the state court? Yes. By the state court? What if the state court says, I don't think it's protected, you disagree? Do you get to go back to the district court to protect or effectuate your judgment under 2283 for enforcement of the protective order? I believe so, Your Honor. Yeah, I think you do. And you may lose back in the district court, but I think the district court gets to say, this is what the order means. Right, for interpretation. Again, I think the issue facing this court and the struggle that we're having is that part of the protective order is here for us to review and to interpret and understand, and that's the part that says, here's what protected information is, and here's what it's not, and that part of the order is not an abuse of discretion. The aspect of whether the record should be sealed is an open question, not before this court. And we would, any guidance that you would give would be mere guidance, if only dictum, on that issue, because it's not ripe for review. Thank you, counsel. Your Honors, I must confess I'm a little bit confused by counsel's argument. I understand counsel to be saying that the protective order only covers the attorney client privileged materials from trial counsel's files and counsel's work product, but that is precisely what we've agreed since before this litigation, not to see a dispute as to what might actually come within those two categories? Well, I actually outlined. You can say we don't want anything that's within those two categories. Are you guys going to start fighting about what's in or not in? I outlined, and it's in the excerpts of record. I outlined in detail in a letter what I believe fell within each of these categories and counsel. And has the district court decided how that, what the order means with respect to those things? Well, unfortunately, in terms of the order itself, the order refers to attorney work product and attorney client privileged materials, but then it refers to protected information and says that we are prohibited from using it in any way. The body of the order seems, you know, the body of the full order, as opposed to the narrow kind funds of the protective order, seems to encompass everything that occurred in the hearing, which is why the court said it wasn't protected sufficiently and it should be sealed. Let me ask you this, because we heard that Gantt was invited to submit a proposed order for sealing. Did that happen in the district court? The court in this order did invite Gantt to submit an order. Okay. But you took an appeal so that that process didn't go forward. Is that right? That's correct. Yeah. But if they had gone forward with, okay, here's what I want sealed, and you had not, if you had not taken the appeal at that time, you would have objected and said, well, okay, A, B, C, you want sealed, we agree. D, E, F, we don't agree at all, and that shouldn't be sealed under the order. And if that had happened and the judge had said, well, we agree with you on D and we disagree with you on E and F, we would then have an actual application of the order so that the judge would be telling us, the district judge would be telling us, this is work product, as I understand it, within the scope of the order. But we don't have that now. Well, we don't have that now, and I couldn't take the risk of losing an appeal from the order in general. But I just wanted to ask you, but as we're now postured, because of the time that you took the appeal, all we have is the face of the order. Well, we have the face of the order, which we've argued is over broad, And we've also argued that in terms of the sealing, that unless an extraordinarily high showing is met, a court cannot seal public proceedings. But we don't have any sealing yet. Pardon? We don't have any sealing yet. No. But I also would point out that because the court prohibits our use of the information, and it prohibits saying the information, you don't yet know what's prohibited  and not going to seal under the order. All you have is the order. We have the order, but what I'm trying to explain is that the order prohibits the use of the exhibits, for example, at the hearing. It broadly prohibits our use of the information obtained in the proceedings, which to me encompasses the transcripts themselves. If I thought the transcripts... Excuse me. Can I interrupt? You say to me, but until you have an opportunity to find out not just how you interpret it, but how the judge interprets it and would apply it to you. We don't know that yet. So you may think that it's going to be terribly broad. You may turn out to be right, but you may turn out to be wrong. Well, Your Honor, I did actually brief this in great detail in the district court and made our position very clear, and I understand this is the court's response to our express delineation in the district court of these various areas. I'd also just like to reiterate in response to counsel's argument that we do not see trial counsel's files. To the extent that any materials from trial counsel's files were turned over to experts, we would agree not to seek those particular exhibits. All of the exhibits in this case were stamped with stamps that identified where they came from and which witness they pertained to. Those could easily be excised. We would stipulate not to use trial counsel's testimony in this hearing. We would stipulate not to use trial counsel's investigator's testimony in this hearing. Have counsel sat down together to go through all this? We had extensive discussions before this motion was filed with no reconciliation. Their position in the district court was that everything was subject to the protective order, that the entirety of the proceeding was subject to the protective order. That's not the position I've heard them take today. That's why I'm surprised, because they're taking a very different tact not only from their position in the district court, but from their position in the briefing in this court. Do you think it would be useful for, this is just me asking, I've not passed this by anybody, but do you think it would be useful to give the parties some time to sit down and see if there's some agreement about what is protected and what is not? I was almost beginning to believe that, until counsel suggested that they might then seek to seal the expert witness's testimony, which is entirely independent of any work product or attorney-client privilege. And is it your position that the sealing of the expert witness testimony is not within the scope of the order? That it is not within the scope of the order? Is that what you're arguing? I'm arguing that the order was so vaguely and broadly worded that it appears to prohibit our use of the information obtained, which would extend to the transcripts themselves. If I thought otherwise, I would have revealed that. Have you sought clarification of the order, then, from the district judge? Because you just said the order is broad and vague as you read it. Have you sought clarification of that order? Your Honor, I would have done, except that would we have gotten clarification if we had allowed the motion to seal to go forward? I'm not sure, Your Honor, because my briefing was so express and distinct on the exact things that we were seeking and not seeking. The Court spent over a year, or not over a year, close to a year, deciding this issue. This Court actually issued its decision reversing the case two years ago today. The trial is pending. The next proceeding is in June of this year. And, I mean, there's an extent to which you can continue to litigate this. Regardless of the clarity or lack of clarity of the order, if, and I know it's a big if, if the parties can agree that certain things are within it and certain things are not, it doesn't matter whether the judge had something else theoretically in mind. And that's why I was asking the question I asked. Sure. And I've stated today, you know, what we are not seeking. And I've stated today what we are seeking. Does Mr. Gantz, counsel, think that it would be valuable to have some time to meet? Or do you think that you're hopelessly deadlocked? I mean, it is important to have this done before we begin. We don't know, is the short answer to Your Honor's question. At a practical level, there are probably at least two different sets of lawyers that need to be involved in that discussion. There are the lawyers that have been involved in the habeas proceeding in federal court. And now that there are state court proceedings, I submit that the district attorney and the public defender's office probably should be involved. Because practically speaking, at some point there will be a state court trial judge who will say, for example, with regard to expert witness testimony, I will or I will not allow it under certain circumstances. Let's suppose that this court affirms that they have a protected order of service scope and the state court judge says, well, that's fine, but I won't permit you to present that testimony. I understand what you're saying. At a very practical level. Well, we could do nothing about that anyway ourselves at this point. And I think that the only question is whether we can short circuit what is before us. I agree. And it may be that with the two different sets of counsel talking, we might be able in fact to short circuit that at a very practical level. Not that you've been very patient with us. I appreciate that. I apologize for jumping off, but it was it. It was. Judge Fletcher and others have pointed out the problem with not having a full record in front of you. You talked about how we determine whether discretion was abused or not. In fact, I submit we don't have a record there. I understand that that's – I understand that. Yeah. Regarding the question about what's attorney compliant or what's not compliant, what expert witness is not. For example, that one of the health – two of the health expert witnesses view Mr. Gant's deposition testimony. He was deposed over two or three days at Sandpoint, shackled to a chair. And his deposition is sealed. It's not sealed. It's protected specifically. The agreement of the attorney general is that it's stated all the time. So while it may be that in the end the expert's testimony in the habeas proceeding might or might not come in, once this is going to work out at a practical level, the State has already agreed that this very prejudicial sight of a man shackled to a chair and given testimony over a two-day period of time with a lawnmower running outside the building would not be used to a jury in Santa Clara County. I understand your position. Let's let Ms. Colleen finish. Thank you. All right. Well, on that point, I've never suggested that the Santa Clara County jury should be able to view those depositions. If Gant were to testify, which we have no idea whether that will happen or not, he's testified twice before, it might be permissible for the prosecutor to use his deposition testimony to impeach him. And I suggest there are ways to address that, such as turning those tapes over to the trial court in camera and allowing the court to make that determination. And that would only occur if Gant testified. But that's a side issue. I know that they have focused, you know, to a large extent on Gant's deposition transcripts. That's not our principal concern. And Gant never said anything inculpatory with respect to these crimes. And we have never focused on counsel's word product, files against depositions or anything as the chief focus of our position. It's the experts. It's the experts. It's the family members. It's the acquaintances who came in and gave a vastly different portrayal of this defendant in Habeas Corpus proceedings and was presented in the trial court. They are now returning to the trial court. It's no different from a trial in any other context. This was all provided entirely apart from counsel's files and precisely to show that counsel failed to develop this evidence. This evidence should have been presented. You know, as a practical matter, it strikes me as most likely, particularly with family members and so on, but maybe even with experts, that Gant is now getting in the hearing in front of the district court the testimony that is most favorable to him. And if you go back and retry, what you're going to most want to use and will find by far the most useful is impeachment, is what was said at the first trial. That is to say, my guess is that the testimony is enormously improved by the time it gets to district court. You can impeach that now in the federal district court by bringing in what happened in the state court. So a lot of this you don't want to bring in. So in other words, you may, in your consultation with counsel, figure out that, you know, there's not very much I want to use. There may be a few things. Your Honor, I understand your point, and I think the family members certainly made every effort to testify favorably in all proceedings. And their stories might have gotten better. Stories do get better sometimes. And, you know, I'm not the district attorney handling this case, and I don't think that just because something we might not want to use something it necessarily entitles a court to say that publicly presented testimony in a federal court evidentiary hearing is somehow then subject to a protective order. So you're talking in a sort of an academic sense in terms of, well, the prosecutor might not want to use this. The prosecutor might not need to use any of this information. Does that give the court the right to keep it hidden? But I'm trying actually to do the opposite of talking in an academic matter. I'm trying to figure out what's before us in a way that we can usefully decide as distinct from things that really haven't been narrowed down by counsel, haven't been narrowed down by the district judge in the application of the order, because there are lots of questions that have not been coming to us in an abstract way. Well, I'm sorry. I've attempted to present this in as concrete a fashion as I can. I understand that, but having brought it to us on appeal before any testing, for example, of a sealing order by the district judge necessarily means that some of it has to be abstract. And you can say in front of us, well, I don't want this and I want that, but that's only in front of us in briefs. That's not the order. We have no power to impose the order ourselves. It's actually no different than what I presented to the district court for a start. But we don't know the district judge's ruling on those questions. But secondly, Your Honor, I can't think that the validity of a protective order depends on whether or not sealing orders have been entered. I mean, this Court has entertained a number of appeals involving protective orders, none of which involve sealing orders. We're arguing the legal principles involved here. Number one, the legal principle that you cannot seal public proceedings as a general matter. And number two, that we have agreed that Bitteker – I mean, we made our concession in terms of trial counsel's files before Bitteker was ever decided. But in any event, Bitteker certainly controls trial counsel's files. We're talking about something independent of trial counsel's files, witnesses' testimony independent of trial counsel's files, of which trial counsel allegedly had no idea and which Gant argued at length should have been his defense. Counsel? This should have been public. Would you agree that with that trial that you say is coming up in June, that the one thing this Court needs to do is to get out of the way so that the district court and the parties can figure out what's going to happen in the state court from the district court perspective? Well, Your Honor, I don't know that I would phrase it as get out of the way. We're seeking this Court's guidance in terms of what is the permissible parameters of a protective order that goes far beyond any order previously entered with respect to trial counsel's files and word product. Thank you, counsel. Thank you. We appreciate the arguments of both sides in this rather knotty little problem. And the case just argued is submitted. We will now take about a five-minute recess before hearing the last case on the morning calendar. Your Honor. This Court stands to recess for five minutes. Thank you. Thank you.
judges: T.G. Nelson, Graber, W. Fletcher